UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WAYNE MIRANDA,            *
                          *
        Petitioner,       *
                          *
   v.                     *   Civil Action No. 12-cv-11957-IT
                          *
ANTHONY MENDONSA,         *
                          *
        Respondent.       *

MEMORANDUM & ORDER

September 3, 2014

TALWANI, D.J.

I.  Background

In July 2008, Petitioner Wayne Miranda was convicted of second-degree murder, assault and battery with a dangerous weapon, and carrying an unlicensed firearm. Commonwealth v. Miranda, 934 N.E.2d 222, 224 (Mass. 2010). At trial, the Government presented theories of principal and joint venture liability to the jury, which returned a general verdict finding Petitioner guilty of second-degree murder. Id. at 232. The jury did not specify whether it found Petitioner guilty individually or as a joint venturer. Id. at 224 n.1.

The following year, the Supreme Judicial Court ("SJC") issued its decision in Commonwealth v. Zanetti, 910 N.E.2d 869 (Mass. 2009). In Zanetti, the SJC examined the theories of principal and joint venture liability, explaining that the theories are not distinct. Id. at 881. Concluding that "[a]t its core, joint venture criminal liability has two essential elements: that the defendant knowingly participated in the commission of the crime charged, and that the defendant had or shared the required criminal intent," the Court "adopt[ed] the language of aiding and abetting rather than joint venture for use in trials that commence after the issuance of

the rescript in this case." Id. at 883. The SJC directed that, post-Zanetti, Massachusetts jurors will be instructed as such and, on appeal, courts "will examine whether the evidence is sufficient . . . to conclude . . . that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime, rather than examine the sufficiency of the evidence separately as to principal and joint venture liability." Id. at 884.[1]

After the SJC issued its decision in Zanetti, Petitioner filed an application for direct appellate review in the SJC, which the SJC granted in September 2009. Supplemental Answer (hereinafter "S.A.") at 43, 56. Thereafter, Petitioner filed his merits brief in support of this appeal. Id. at 110. In his brief, Petitioner mentioned the application of Zanetti only in a footnote, asserting that "the changes in the law of joint venture as set forth in . . . Zanetti do not apply" because his trial occurred in July 2008. Id. at 94. Petitioner did not argue further that application of Zanetti to review Petitioner's case would result in an ex post facto application of law in violation of Petitioner's due process rights.

In September 2010, the SJC issued a decision affirming Petitioner's convictions. In its decision, the SJC addressed, among others, Petitioner's contentions that there was insufficient evidence to warrant a finding that he was the shooter, and thus acted as a principal, and insufficient evidence of a joint venture. Miranda, 934 N.E.2d at 232–33. The SJC rejected Petitioner's sufficiency argument by applying the test set forth in Zanetti and concluding that, under this framework, "it d[id] not matter who shot the victim" because "[t]he jury reasonably could have inferred the defendant knowingly participated in the shooting by committing the

---

[1] Pre-Zanetti, "[t]o succeed on a theory of deliberately premeditated murder as a joint venturer . . ., the Commonwealth was required to prove that the defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement, [was] willing and available to help the other if necessary." Zanetti, 910 N.E.2d at 875 (quotation marks and citations omitted).

shooting himself . . . or by supplying [his co-venturer] with the means to commit the shooting . . ., with the intent that [his co-venturer] do so." Id. at 233.

After the SJC affirmed Petitioner's convictions, Petitioner filed a timely petition for rehearing seeking review of the SJC's alleged ex post facto application of law in its decision. S.A. 251. In February 2011, the SJC denied the petition for rehearing without a written decision or explanation. Id. at 259. Petitioner then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied in November 2011. Miranda v. Massachusetts, 132 S. Ct. 548 (2011). Thereafter, Petitioner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "petition"), which is now before this court. In the petition, Petitioner argues, as his second ground for relief, that the SJC's alleged ex post facto application of law in its decision denied him due process, fundamental fairness, and equal protection. See Pet. 28 U.S.C. § 2254 Writ Habeas Corpus Person State Custody [hereinafter Pet.], Statement of Grounds & Supporting Facts, 2–3 [#1].

II. Discussion

   *A. Exhaustion*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must exhaust available state remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A). This requirement gives "the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Josselyn v. Dennehy, 475 F.3d 1, 2–3 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). Exhaustion requires a petitioner to present, or do his best to present, the substance of a federal habeas claim "fairly and recognizably" to the state's highest tribunal before seeking federal review. Janosky v. St. Amand, 594 F.3d 39, 50 (1st Cir. 2010); Adelson v. DiPaola,131 F.3d 259, 262–63 (1st Cir.

1997) ("Exhaustion obligations mandate that a habeas petitioner present, or do his best to present, his federal claim to the state's highest tribunal."). "A claim is fairly presented so long as it is made in such a way that 'a reasonable jurist' would have recognized 'the existence of the federal question.'" Josselyn, 475 F.3d at 3 (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)). A petitioner is excepted from the exhaustion requirement if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(B)(i)–(ii).

Petitioner claims that his detention violates federal law on three separate grounds, including that he was denied due process, fundamental fairness, and equal protection when the SJC reviewed his sufficiency argument as to second-degree murder under the standard pronounced in Zanetti, a decision which post-dated Petitioner's trial and conviction. See Pet., Statement of Grounds & Supporting Facts, 2–3. Petitioner, however, has not exhausted state remedies as to this particular claim because he has not adequately presented it to the SJC, the state's highest tribunal. See Adelson, 131 F.3d at 263. "Raising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion." Gunter v. Maloney, 291 F.3d 74, 81 (1st Cir. 2002). Even though Petitioner notes that the SJC requested a response from the Government to Petitioner's petition for rehearing, see Mem. Supp. Pet. Writ Habeas Corpus at 1, Petitioner's presentation of this claim in the petition for rehearing is inadequate because a petition for rehearing seeks discretionary review. See Mass. R. App. P. 27(a). Moreover, Petitioner's mere assertion in his merits brief to the SJC on direct review that Zanetti does not apply because his trial occurred in July 2008 does not constitute fair presentment of Petitioner's due process claim. See Janosky, 594 F.3d at 50. Accordingly, Petitioner has failed to exhaust state remedies as to this claim, even despite the fact that the claim

arose only after the SJC affirmed Petitioner's convictions. See Gunter, 291 F.3d at 81–82 (petitioner failed to exhaust state remedies where the SJC, by sua sponte raising the question whether the merger doctrine precluded conviction based upon the theory of felony-murder, had prompted the petitioner to raise an ineffective assistance of counsel claim for the first and only time in a petition for rehearing); Brown v. Ricci, No. 11–11154–RGS, 2011 WL 6980830, at *4 (D. Mass. Dec. 22, 2011) (petitioner failed to exhaust state remedies where he failed to collaterally challenge the SJC's action in delineating the charge against him as "distributing," even though the jury was only instructed as to the "dispensing" theory of liability).

There were two potential alternatives available for Petitioner to exhaust this claim. First, Petitioner could have filed a petition for a writ of habeas corpus in state court. See In re Averett, 533 N.E.2d 1023, 1024 (Mass. 1989) ("[W]here a petition for a writ of habeas corpus is based on grounds distinct from the issues at the indictment, trial, conviction, or sentencing stage, we have commented favorably on the propriety of issuing writs of habeas corpus."). Second, Petitioner could have potentially presented this claim to the state court through a motion for collateral relief under Massachusetts Rule of Criminal Procedure 30(a). Under Rule 30(a), Petitioner "may at any time, as of right," file a motion requesting the trial judge to release him "upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts." Mass. R. Crim. P. 30(a); see id. at Reporter's Notes (the purpose of the rule is to "consolidate[] the previously distinct procedures of habeas corpus and writ of error").

Petitioner availed himself of neither alternative. "Federal habeas review does not demand that a petitioner in every case ask the state for collateral relief where he has already fairly presented the claim and the evidence on direct appeal." Gunter, 291 F.3d at 82. But where, as

here, Petitioner's claim arose only after the SJC affirmed his conviction, Petitioner should give the state court the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights," Duncan, 513 U.S. at 365, by presenting the claim first to the state court through either a petition for habeas corpus or Rule 30(a) motion for post-conviction relief.

      B.      *Good Cause to Stay this Proceeding*

In the absence of total exhaustion of claims, a federal district court cannot adjudicate a habeas corpus petition. Josselyn, 475 F.3d at 4 ("Congress maintained this 'total exhaustion' requirement for post-AEPDA petitions."). Because "Congress also adopted a one-year statute of limitations for the filing of fully-exhausted claims in a federal habeas petition and did not provide for the tolling of the limitations period while a mixed habeas petition was pending in federal court," id. (internal citations omitted), the Supreme Court in Rhines v. Weber, 544 U.S. 269 (2005), approved a "stay and abeyance" procedure, id. at 275. Under this procedure, "a district court can stay the petition and hold it in abeyance while the petitioner exhausts the unexhausted claims." Josselyn, 475 F.3d at 4 (citing Rhines, 544 U.S. at 275). To obtain a stay in this circumstance, a "petitioner must show that there was 'good cause' for failing to exhaust the state remedies, the claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics." Id.

Here, the court finds good cause for Petitioner's failure to exhaust state remedies. First, Petitioner's claim arose only after the SJC issued its decision affirming Petitioner's conviction. In reviewing Petitioner's sufficiency claim, the SJC applied a formulation of liability pronounced in Zanetti, a decision by that court issued after Petitioner's trial and conviction.

Second, it is understandable why Petitioner would have read Zanetti to apply prospectively and summarily dismissed its application in his brief to the SJC. Zanetti did not

6

apply its formulation of liability to the defendant in that case, Zanetti, 910 N.E.2d at 874–78, and the court "adopt[ed] the language of aiding and abetting rather than joint venture for use in trials that commence after the issuance of the rescript in this case," id. at 883. Furthermore, the SJC explained that "[b]ecause this change in language affects only future cases, it has no bearing on cases already tried." Id. at 883 n.21.

Finally, because this particular claim challenges the constitutional validity of his judicial review, and does not challenge issues at the indictment, trial, conviction, or sentencing stage, Petitioner may have thought that a Rule 30(a) motion for post-conviction relief was an inappropriate vehicle to challenge the SJC's decision. In this instance, the court will not punish Petitioner for failing to present the claim in a state habeas proceeding.

Because this court finds that Petitioner's due process claim, which involves constitutional issues concerning an alleged ex post facto application of a judicial interpretation of joint venture liability in Massachusetts, is potentially meritorious, and that Petitioner has not engaged in intentional dilatory tactics, the court finds good cause to stay the petition and hold it in abeyance while Petitioner exhausts the second ground for relief asserted in the petition.

IV.  Conclusion

For the foregoing reasons, the petition is hereby STAYED and held in abeyance while Petitioner exhausts state remedies for the second ground of relief asserted in the petition.

IT IS SO ORDERED.

Date: September 3, 2014                          /s/ Indira Talwani
                                                 United States District Judge