UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WAYNE MIRANDA,

    Petitioner,

v.

ANTHONY MENDONSA,

    Respondent.

Civil Action No. 12-cv-11957-IT

MEMORANDUM & ORDER

April 11, 2017

TALWANI, D.J.

Petitioner Wayne Miranda filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [#1]. He claims that his due process rights were violated: (1) when the prosecutor participated in facilitating cash payments to eyewitnesses to the shooting, which were contingent upon reaching specified outcomes during the course of Petitioner's case; (2) when the Massachusetts Supreme Judicial Court ("SJC") affirmed his conviction by applying new law *ex post facto*; and (3) when the prosecutor made statements during his closing argument that improperly shifted the burden of proof to Petitioner and relied on alleged evidence outside of the record. For the reasons that follow, the Petition [#1] is DENIED.

I.   Factual Background and Procedural History

    *A. Factual Background*

On November 18, 2005, a grand jury charged Petitioner with murder in the first degree, assault and battery with a dangerous weapon, and unlawful possession of a firearm. Pet'r Mem. Supp. Pet. Writ Habeas Corpus 1 [#22].

At trial, the Government presented theories of principal and joint venture liability to the jury. Commonwealth v. Miranda, 934 N.E.2d 222, 224 n.1 (Mass. 2010) ("Miranda I"). Petitioner asserted a defense of misidentification. Id. at 227. In support of that defense, his trial counsel presented expert testimony and elicited evidence that others may have been responsible for the shooting and that the police investigation was not thorough. Id.

Trial counsel also attacked the credibility of three Government witnesses, in part by "bringing out the fact that each received some form of consideration, including monetary consideration, in exchange for their testimony." Id. The jury heard testimony that witnesses John Andrade and Carmen Rodriguez had each already received $3,000 from the New Bedford Chamber of Commerce ("Chamber of Commerce") pursuant to its reward program for information leading to an indictment in an unsolved homicide, and each stood to receive an additional $2,000 if the proffered information led to a conviction. Id. at 227-28; Suppl. Answer 1844-45, 1919-21, 2286 ("S.A.") [#14]. The jury also heard testimony from the individual in charge of the Chamber of Commerce program that under that program, a witness would not receive payment until the Chamber of Commerce received a letter from the district attorney verifying that the witness had provided information in connection with a specified, unsolved homicide, and that the information led to an indictment, conviction, or both. S.A. 1919-22 [#14]; Miranda I, 934 N.E.2d at 227-28. That individual also testified that the district attorney provided the required letter for Andrade and Rodriguez, although the district attorney did not endorse or otherwise fund the program. S.A. 1921-22 [#14]; Miranda I, 934 N.E.2d at 227-28.

In July 2008, Petitioner was convicted of second-degree murder, assault and battery with a dangerous weapon, and unlawful possession of a firearm. Miranda I, 934 N.E.2d at 224. The jury returned a general verdict, and with respect to the second-degree murder and assault and

battery with a dangerous weapon charges, did not specify whether it found Petitioner guilty individually or as a joint venturer. Id. at 224 n.1, 232; S.A. 2496 [#14].

        B. *Procedural Background*

In September 2009, the SJC granted Petitioner's application for direct appellate review. S.A. 43, 56 [#14]. In his merits brief before that court, Petitioner mentioned in a footnote the SJC's decision in Commonwealth v. Zanetti, 910 N.E.2d 869 (Mass. 2009), in which the SJC had examined theories of principal and joint venture liability. The footnote asserted that "the changes in the law of joint venture as set forth in . . . Zanetti do not apply" because his trial occurred in July 2008, S.A. 94 [#14], but did not argue that application of Zanetti to review Petitioner's case would result in an *ex post facto* application of law in violation of Petitioner's due process rights.

In September 2010, the SJC affirmed Petitioner's convictions. It rejected Petitioner's contentions that there was insufficient evidence to warrant a finding that he was the shooter, and thus acted as a principal, and insufficient evidence of joint venture. Miranda I, 934 N.E.2d at 232-33. The SJC explained that "it d[id] not matter who shot the victim" because "[t]he jury reasonably could have inferred the defendant knowingly participated in the shooting by committing the shooting himself . . . or by supplying [his co-venturer] with the means to commit the shooting . . ., with the intent that [his co-venturer] do so." Id. at 233 (citing Zanetti, 910 N.E.2d at 884). It also held that the evidence permitted a conviction on either theory. Miranda I, 934 N.E.2d at 233.

After the SJC affirmed his convictions, Petitioner requested a rehearing for review of the SJC's alleged *ex post facto* application of law in its decision. S.A. 251-58 [#14]. The SJC denied the request. Id. at 259. Petitioner then filed a petition for a writ of certiorari in the United States

3

Supreme Court, which was denied in November 2011. Miranda v. Massachusetts, 132 S. Ct. 548 (2011). Thereafter, Petitioner filed the Petition [#1] here.

On September 3, 2014, this court stayed the Petition, finding that Petitioner had not exhausted his state court remedies with respect to the alleged *ex post facto* application of law claim but that a stay was warranted to allow him to do so. Mem. & Order 7 [#27]. Petitioner subsequently filed a Motion for Relief from Unlawful Restraint in Violation of the United States Constitution in Bristol County Superior Court, which was denied on June 10, 2015. Pet'r Suppl. Mem. Supp. Pet. 1-2 [#34]. The SJC affirmed that denial on May 12, 2016. Commonwealth v. Miranda, 49 N.E.3d 675, 676 (2016) ("Miranda II"). Petitioner then filed a Notice of Exhaustion and Request to Include Filings as Part of Record [#28], and this court lifted the stay on June 13, 2016. Elec. Order [#29].

II.  Legal Standard for Habeas Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must exhaust available state remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A). This requirement gives "the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Josselyn v. Dennehy, 475 F.3d 1, 2-3 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). Once a claim is adjudicated on the merits in the state court, a federal court considering a petition for a writ of habeas corpus determines, as a threshold, and potentially dispositive, issue whether clearly established federal law exists. Lockyer v. Andrade, 538 U.S. 63, 71 (2003). Clearly established federal law refers to holdings, not dicta, in Supreme Court decisions that existed on the date the state court rendered the challenged decision. Williams v. Taylor, 529 U.S. 362, 412 (2000); Greene v. Fisher, 565 U.S. 34, 38 (2011). In determining whether clearly established law exists,

4

a Supreme Court's holdings are to be read narrowly. See Carey v. Musladin, 549 U.S. 70, 76-77 (2006) (finding no clearly established federal law where previous Supreme Court cases only applied inherent prejudice test to cases involving government-sponsored conduct, rather than conduct of independent courtroom spectators, thus creating an "open question in our jurisprudence"). Where no clearly established federal law exists, a district court cannot decide the merits of a habeas petition, because it cannot determine whether the state court's decision was contrary to or an unreasonable application of that law. Id. (finding state court decision was not an unreasonable application of Court's clearly established precedents); Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam); Howes v. Fields, 565 U.S. 499, 508 (2012).

If such clearly established federal law exists, the court must then determine whether the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As to (1), a state court precedent is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." Williams, 529 U.S. at 405. A state-court decision "is also contrary to [Supreme Court] precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Id. A state court unreasonably applies clearly established Supreme Court precedent if it applies legal principles to the facts of a case "in an objectively unreasonable manner," "unreasonably extends clearly established principles to a new context" in which they do not belong, or "unreasonably refuses to extend clearly established legal principles to a new context" in which they should apply. Sleeper v.

5

Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citing L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir.2002)); see Williams, 529 U.S. at 407-09. As to (2), a federal court may not disturb the state court's findings of fact unless a petitioner rebuts the presumption that those facts are correct "with clear and convincing evidence to the contrary." Sleeper, 510 F.3d at 38; 28 U.S.C. § 2254(e)(1).

III. Discussion

    *A. Claim 1: Contingent Witness Payments*

Petitioner claims first that his due process rights were violated when the prosecutor knowingly participated in the facilitation of cash payments to witnesses that were contingent upon a particular outcome. Petitioner properly exhausted this claim in Miranda I.

Clearly established federal law exists on the general question of whether a due process violation results from the government's use of a compensated witness. In Hoffa v. United States, the Supreme Court considered whether the government's compensation of an informant violated the defendant's due process rights. 385 U.S. 293, 310-12 (1966). It reasoned that such use was "not per se unconstitutional," and held that no due process violation was present where certain procedural safeguards, such as cross-examination, jury instructions on witness credibility, and elucidation of the facts surrounding the witness's connection to the government, were in place. Id. at 311-12; see also Napue v. Illinois, 360 U.S. 264, 269 (1959) (holding that the government must not knowingly sponsor or suborn perjury). The Supreme Court reiterated these procedural safeguards in later cases. In Giglio v. United States, the Court held that the government must fully disclose to the defendant the terms of any agreement with a cooperating witness. 405 U.S. 150, 154 (1972) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). It also announced in Banks v. Dretke, that defendants must be afforded "broad latitude to probe [informants'] credibility by

6

cross-examination . . . ." 540 U.S. 668, 702 (2004) (quoting On Lee v. United States, 343 U.S. 747, 757 (1952)) (concluding that the use of an informant violated the defendant's right to due process when the jury was ignorant of the informant's "true role in the investigation and trial of the case"). The SJC used this rubric in determining whether the witness payments to Andrade and Rodriguez violated Petitioner's due process rights. Miranda I, 934 N.E.2d at 231 ("In analyzing the defendant's due process challenge, we adopt the Federal procedural safeguards . . . ."). Accordingly, this court reviews the SJC decision under these broad standards.

Multiple procedural safeguards were in place at Petitioner's trial. Prior to trial, the Government disclosed to Petitioner's trial attorney the terms of the reward program by which Andrade and Rodriguez had received, and stood to receive, payments in exchange for providing information. Miranda I, 934 N.E.2d at 231. His trial attorney was thereafter given the opportunity to, and did, cross-examine both witnesses about those payments, S.A. 1844-45, 2286, and the jury also heard testimony from the individual who ran the Chamber of Commerce reward program, S.A. 1918-22. Further, the judge instructed the jury after both Andrade and Rodriguez's testimony to "scrutiniz[e]" the testimony "with particular care" because the rewards those witnesses received were "contingent on there being a guilty verdict." S.A. 1861-62, 2286. In her final charge to the jury, the judge repeated this instruction and gave further instructions on how to assess witness credibility. S.A. 2415-18 ("Where a witness' receipt of a reward is contingent on there being a guilty verdict, the testimony of such a witness should be scrutinized with particular care."). Finally, no facts exist indicating that either the Government or the Chamber of Commerce suborned perjury. Given these procedural safeguards, the SJC's decision that the Government's use of compensated witnesses whose payment was contingent upon a

7

particular outcome did not violate Petitioner's due process rights was neither contrary to nor an unreasonable application of clearly established federal law.

Perhaps anticipating this analysis, Petitioner asserts that no clearly established law exists on the narrower question of whether a due process violation exists when the witness payment is contingent upon a particular outcome, and that this court should consider the matter anew. But this argument does not save the claim, for the absence of clearly established federal law would preclude this court from deciding the merits of his petition. See Musladin, 549 U.S. at 76.

### B. Claim 2: Ex Post Facto Application of Zanetti

Petitioner asserts that his rights to due process, equal protection, and fundamental fairness were violated when the SJC applied Zanetti in reviewing the sufficiency of the evidence supporting his conviction. Petitioner exhausted this claim in Miranda II.

"[L]imitations on ex post facto judicial decision making are inherent in the notion of due process." Rogers v. Tennessee, 532 U.S. 451, 456 (2001). Thus, where "judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, [the construction] must not be given retroactive effect." Id. at 457 (citing Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)) (internal quotation marks omitted). The Supreme Court grounded its "check on retroactive judicial decisionmaking . . . in accordance with the more basic and general principle of fair warning," because "[t]he common law, in short, presupposes a measure of evolution that is incompatible with stringent application of ex post facto principles." Rogers, 532 U.S. at 459, 461.

The SJC concluded that the application of Zanetti did not violate these principles because Zanetti "did not enlarge or diminish the scope of existing joint venture liability," that nothing in Zanetti criminalized any action by Miranda that was lawful when taken or deprived Miranda of

any previously available defense, and that the decision in Zanetti was not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." Miranda II, 49 N.E.3d at 676-77. Thus, its application of Zanetti to Petitioner's case did not violate due process. Id. at 677. Petitioner characterizes Miranda II as nothing more than a "summary disposition" that does "not meaningfully address legal issues raise[d] nor the arguments made by Mr. Miranda that pertain to those issues." Pet'r Suppl. Mem. Supp. Pet. Writ Habeas Corpus 3-4 [#34]. Petitioner's characterization is incorrect. As set forth above, the SJC explained that Zanetti did not change any law that would have affected Petitioner's case, and therefore no due process violation occurred.

The SJC emphasized further that even if Petitioner were "entitled to have the evidence of principal liability and joint venture liability evaluated separately, the outcome would have been no different," as "the evidence presented at trial was sufficient to convict Miranda as either the principal shooter or as a joint venturer." Miranda I, 49 N.E.3d at 677. This last conclusion forecloses his *ex post facto* claim. In considering the habeas petition of another individual whose trial occurred before Zanetti, the First Circuit considered whether the Zanetti standard allowed the court to avoid having to make the determination as to whether the evidence supported either principal or joint venture liability. Housen v. Gelb, 744 F.3d 221, 225 n.3 (1st Cir. 2014). Noting that application of that standard to cases tried before that standard was articulated in Zanetti "may evoke due process concerns," the court stated that it was "best to meet the petitioner's sufficiency of the evidence argument head-on." Id. Ultimately, it held that the evidence supporting petitioner's conviction was sufficient on both principal and joint venture liability theories, and that as a result, the SJC had committed no reversible error. Id. at 225-27.

9

Following Housen, although the SJC's analysis is compelling, this court need not finally resolve whether the SJC's application of Zanetti to an earlier case may raise due process concerns. In addition to finding no due process concern, the SJC concluded that the evidence was sufficient under the "Latimore standard" to convict Petitioner on both theories of principal and joint venture liability. Miranda I, 934 N.E.2d at 233; Miranda II, 49 N.E.3d at 677. Petitioner does not challenge this finding. Accordingly, the court does not need to decide the *ex post facto* challenge, and Petitioner's request for habeas relief on claim 2 is denied.

### C. Claim 3: The Prosecutor's Closing Argument

Petitioner's third claim is that the prosecutor's closing argument violated his due process rights by shifting the burden of proof to Petitioner in two ways: (1) by suggesting that there was evidence that could not be heard because witnesses feared Petitioner; and (2) by emphasizing what Petitioner did not do or say at trial. He asserts that as a result of this improper burden shifting, the trial was infected "with unfairness as to make the resulting conviction[s] a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986).[1] Petitioner exhausted this claim in Miranda I.

---

[1] Petitioner objects to the following statements:

- "[W]e have also heard about this fourth man, the so-called driver of the car. . . . Apparently responsible for driving the car back to [the victim's] family's home. The act, I would submit, of a friend. Was it Casey DePina? I suppose we don't really know. Was it Barry Souto? I suppose we don't know. But where is that fellow? Casey DePina was interviewed by the police. Barry Souto you heard was interviewed for a short term until he closed the door on the police. Where is that fellow to tell the story about how his friend died? We're talking two and a half years later. Where is he? When you think about a friend not being able to come forward, for whatever reason, to talk about how his own friend died, you may have an idea of what [the former president of the chamber of commerce] was telling you when he said that the Chamber of Commerce that he ran had a reward program . . . established to try to solve unsolved homicides . . . . Again, I invite you to look at the evidence please." Miranda, 934 N.E.2d at 234 n 22; S.A. 2390 [#14].

In general, habeas review of a claim is precluded when a state court has decided that claim on the basis of an adequate and independent state-law ground that is firmly established and regularly followed. Coleman v. Thompson, 501 U.S. 722, 729 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989). One common example of an adequate and independent state law ground for a decision is when "a state court decline[s] to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman, 501 U.S. at 729-30. The First Circuit "[has] held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (citations omitted). The SJC's decision to review a waived claim for the limited purpose of determining whether any error existed giving

---

- "[Reis] only came forward, as you recall, in December of last year. I suggest to you if she was showing signs of nervousness that night and that next morning, it had another cause [other than an investigation concerning drugs]. But I know you don't welcome that either. A reward, the arrangement, her being taken out of that neighborhood. Think, if you will, of that fourth person, that friend who we never heard from. Think about the event." Miranda, 934 N.E.2d at 234 n.23; S.A. 2391 [#14].

- There is this issue about whether or not mouths were moving or whether she saw that, but isn't it interesting that the only point on which she [Ms. Reis] is challenged as being inconsistent in the various times that she has had to discuss this case is whether or not she saw mouths move at this location? Not where the gun came from, not Wayne, not the chase, not the gunshots. Just whether or not she saw mouths moving. Pet'r Mem. Supp. Pet. Writ Habeas Corpus 48 [#22]; S.A. 2401 [#14].

- Now, it's true Buddy [Mr. Andrade] says something about a passing of a firearm, but again, isn't that interesting that that's the only point in this whole set of observations here on which he is challenged, given his – he told you that he testified at some prior proceeding, and he gave a statement to the police that night, gave a video statement to the police that night. Carmen [Rodriguez] gave a statement to the police that night. The only point on which he is challenged as being inconsistent is whether or not there was a passing of a gun after the shooting. Not the events leading up to the shooting, not the events following it, but the passing of that firearm. Pet'r Mem. Supp. Pet. Writ Habeas Corpus 48 [#22]; S.A. 2403 [#14].

11

rise to a substantial risk of a miscarriage of justice does not constitute a waiver of procedural default. Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004).

In cases where the adequate-and-independent-ground rule applies, "federal habeas review of the claim[] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To establish cause, a petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner must also show "actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). To establish a "fundamental miscarriage of justice," a petitioner must show that he is actually innocent of the crime for which he was convicted. McCleskey v. Zant, 499 U.S. 467, 495 (1991). This "narrow exception to the cause-and-prejudice imperative," is "seldom to be used, and explicitly tied to a showing of actual innocence." Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015) (quoting Burks v. Dubois, 55 F.3d 712, 717 (1st Cir. 1995)).

The SJC stated that Petitioner waived his arguments with respect to the prosecutor's closing argument because "he failed to object at trial on the grounds he now raises." Miranda I, 934 N.E.2d at 233. It then went on to "review his claims to determine whether there was error, and if so, whether it gave rise to a substantial risk of a miscarriage of justice," concluding that there was no such risk. Id. at 233-35. Thus, claim 3 is procedurally defaulted. Nor can Petitioner rectify this procedural default. He does not argue that he has shown cause for the default and prejudice resulting therefrom, or that he is actually innocent. He does not even mention procedural default. Instead, he acknowledges in a footnote that, excepting one statement he did

not raise before the SJC, the statements about which he now complains "did not receive an objection." Pet'r Mem. Supp. Pet. Writ Habeas Corpus 47 n.20 [#22].

IV. Conclusion

For the foregoing reasons, Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [#1] is DENIED.

IT IS SO ORDERED.

Date: April 11, 2017.  /s/ Indira Talwani
United States District Judge